IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| MILES HOOD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 1:12-cv-00126 |
| v. ) | Judge Nixon / Knowles |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record.[2] Docket No. 12. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 15.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Fed. R. Civ. P. 25(d), Carolyn W. Colvin should therefore be substituted for Commissioner Michael J. Astrue as the Defendant in this action. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Although Plaintiff has entitled his motion "Motion for Judgment on the Pleadings," the Court will construe it as a Motion for Judgment on the Administrative Record.

1

Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

## I. INTRODUCTION

Plaintiff filed his applications for DIB and SSI on March 9, 2009, alleging that he had been disabled since January 1, 2006, due to "[k]nees, back, hips, shoulders, [and] dizziness." Docket No. 10, Attachment ("TR"), TR 107, 114, 129. Plaintiff's applications were denied both initially (TR 53, 54) and upon reconsideration (TR 55, 56). Plaintiff subsequently requested (TR 76) and received (TR 82) a hearing. Plaintiff's hearing was conducted on June 29, 2011, by Administrative Law Judge ("ALJ") Linda Gail Roberts. TR 14. Plaintiff and vocational expert ("VE"), Lisa Courtney, appeared and testified. *Id.*

On July 8, 2011, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 48. Specifically, the ALJ made the following findings of fact:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2010.

2. The claimant has not engaged in substantial gainful activity since October 1, 2005, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: osteoarthritis; chronic back pain status post back surgery; hypertension; history of alcohol abuse; and depressive disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

2

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except can lift and carry up to 50 pounds occasionally and 20 pounds continuously; can sit 7 hours in an 8-hour workday; can stand 2 hours in an 8-hour workday; can walk 2 hours in an 8-hour workday; can frequently climb stairs, ramps, ladders, or scaffolds; can occasionally balance, stoop, kneel, crouch, or crawl; can occasionally operate a motor vehicle; and can tolerate frequent exposure to humidity and wetness and extreme cold. Additionally, the claimant can understand and remember simple and detailed instructions; can focus, attend to and concentrate on tasks for periods of at least 2 hours without unusual distraction or need for special supervision; can establish and maintain appropriate interactions and relationships with peers and supervisors without exhibiting behavioral extremes; and can adapt to routine workplace changes, travel independently, avoid normal hazards and set and carry out realistic goals.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on August 4, 1956 and was 49 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

> 11. The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2005, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

TR 42-48.

On July 26, 2011, Plaintiff timely filed a request for review of the hearing decision. TR 11. On August 31, 2012, the Appeals Council issued a letter declining to review the case (TR 1), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999)

4

(*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences.  *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached.  *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined.  *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience.  *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

### B.  Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

> (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[3] or its equivalent. If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.
>
> (5) Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of

---

[3] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

> jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added). *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ relied upon VE testimony that conflicted with the job descriptions in the Dictionary of Occupational Titles, and that consequently, the Commissioner

failed to meet its burden at Step Five of the Sequential Evaluation Process. Docket No. 13. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

In the instant case, Plaintiff argues that the ALJ improperly relied upon VE testimony that conflicted with the DOT, where the jobs identified by the VE did not comport with the physical demands outlined in the hypothetical presented at the hearing. Docket No. 13. Specifically, Plaintiff argues that although the ALJ asked the VE to assume the limitations contained within Dr. Wilson's report as the hypothetical RFC, the ALJ's decision inaccurately summarized Dr. Wilson's opinion with regard to standing and walking limitations. *Id.* Plaintiff further argues that the three medium jobs identified by the VE were inconsistent with the hypothetical limitations. *Id.* With regard to the identified jobs of equipment cleaner and kitchen

helper, Plaintiff contends that these jobs require "frequent" stooping, kneeling, and crouching, conflicting with the ALJ's finding that Plaintiff was limited to "occasional" stooping, kneeling, and crouching. *Id.* Plaintiff also argues that the job of filling machine operator is incompatible with the hypothetical presented to the VE. *Id.* He specifically contends that while the hypothetical allowed for only ten minutes standing at one time and five minutes walking at one time, filling machine operator is defined as a medium job, which requires "the worker to stand or walk most of the time." *Id.* at 11, *citing* SSR 83-14. Plaintiff further argues that the ALJ erred by not eliciting a reasonable explanation for the conflict between the VE testimony and the DOT. *Id.* Plaintiff argues that even if the filling machine operator job fell within the hypothetical vocational profile, the ALJ would have identified only one job that exists in "very limited" numbers in the regional and national economy. *Id.* Plaintiff contends that, consequently, the Commissioner did not meet his burden at step five. *Id.*

Defendant responds that although the ALJ did, in fact, inaccurately summarize Dr. Wilson's opinion, this erroneous summarization was harmless, as the VE's testimony properly relied directly on Dr. Wilson's opinions, rather than the erroneous description by the ALJ. Docket No. 15. Defendant argues that because the VE's answers were based directly on Dr. Wilson's opinions, the ALJ properly relied upon the VE's testimony in reaching his finding of non-disability. *Id.*

With regard to Plaintiff's contention that the three jobs identified by the VE were incompatible with Dr. Wilson's opinion, Defendant responds that the identified jobs were compatible with all of Plaintiff's established functional limitations. *Id.* Specifically, Defendant argues that the VE did not identify generically medium jobs, but instead identified three jobs

9

within a subset of medium work. *Id.* Defendant contends that the VE identified a subset of the jobs of equipment cleaner and kitchen helper that were within Plaintiff's ability to engage in occasional stooping, kneeling, and crouching. *Id.* Defendant also contends that the VE identified a subset of the job of filling machine operator that were within the limited range of medium work set forth in Dr. Wilson's opinion. *Id.*

With respect to Plaintiff's contention that the VE's testimony conflicted with the DOT, Defendant responds that the VE's testimony did not conflict with the DOT, but rather supplemented the information in the DOT, and that the VE explained any potential conflicts with the DOT. *Id.* Specifically, Defendant argues that the VE's testimony reflected the limited range of medium work set out by Dr. Wilson's opinion, which precluded direct reliance on the DOT because the DOT does not account for a limited range of medium work. *Id.* Defendant further contends that the VE tailored her response to the Plaintiff's functional limitations, going beyond the DOT's generic descriptions. *Id.* Finally, Defendant argues that "the only conflict is created by Plaintiff's misinterpretation of the VE's testimony as being bound by the DOT." *Id.* at 12.

As explained above, the Commissioner has the burden at step five of the sequential evaluation process of establishing the claimant's ability to work by proving the existence of a significant number of jobs in the national economy that the claimant could perform, given his or her age, experience, education, and residual functional capacity. 20 C.F.R. §§ 404.1520, 416.920. *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990). The Commissioner's burden at step five can be satisfied by relying on the grid rules only if Plaintiff is not significantly limited by nonexertional impairments, such as mental limitations, manipulative limitations or environmental limitations. *Abbot v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990). In

the presence of nonexertional limitations that would preclude the application of the grid regulations, "expert testimony would be required to satisfy the Secretary's burden of proof regarding the availability of jobs which this particular claimant can exertionally handle." *Kirk v. Secretary*, 667 F.2d 524, 531 (6th Cir. 1983). In other words, the ALJ may rely on the testimony of a vocational expert in response to a hypothetical question as substantial evidence of the existence of a significant number of jobs that the claimant is capable of performing as long as the hypothetical question accurately represents the claimant's limitations. *See Varley*, 820 F.2d at 779 (*quoting O'Banner v. Secretary*, 587 F.2d 321, 323 (6th Cir. 1978)).

In the case at bar, the ALJ specifically considered Plaintiff's physical limitations as opined by consultative examiner, Dr. Woodrow Wilson. TR 46. In assigning significant weight to Dr. Wilson's opinion, the ALJ stated:

> As for the opinion evidence, examining physician Dr. Woodrow Wilson completed a consultative physical examination of the claimant in February 2011. Ex. 8F. Dr. Wilson opined that the claimant can lift and carry up to 50 pounds occasionally and 20 pounds continuously; can sit 7 hours in an 8-hour workday; can stand 2 hours in an 8-hour workday; can walk 2 hours in an 8-hour workday; can frequently climb stairs, ramps, ladders, or scaffolds; can occasionally balance, stoop, kneel, crouch, or crawl; can occasionally operate a motor vehicle; and can tolerate frequent exposure to humidity and wetness and extreme cold. Ex. 8F. Dr. Wilson's opinion is consistent with the medical evidence and other substantial evidence of record in this case. Accordingly, his opinion is given significant weight and has been incorporated into the above-stated residual functional capacity.

*Id.*, *referencing* TR 271-75.

Regarding the ALJ's hypothetical questions posed to Vocational Expert, Lisa Courtney, and her answers thereto, the ALJ and VE engaged in the following dialogue:

> Q  . . . Hypothetical one: assume this gentleman is of the age,

11

education, has the work history as he testified, and transferable skills as you have testified. Assume I should find that the claimant has pain and impairment which restrict his abilities as follows: for hypothetical one I would like to use the medical source statement in Exhibit 8F, page 12 through 17. Would I be correct in assuming that is a medium medical source statement?

A    It's a limited range of medium.

Q    Limited medium. All right. To that, I would like for you to add 6F mental: Claimant has the ability to understand and remember simple and detailed instruction; claimant has the ability to focus and attend to and concentrate on tasks for periods of at least two hours without usual – without unusual distraction or the need for specific supervision; claimant has the ability to establish and maintain appropriate intereactions [*sic*] [phonetic] and relationships with peers and supervisors without exhibiting behavioral extremes; claimant can adapt to routine workplace changes, travel independently, avoid normal hazards, and set and carry out realistic goals. That's at Exhibit 6F, page 3. All right, based on that, could this gentleman return to any of his past work?

A    No past work.

Q    What about jobs in the US or state of Tennessee?

A    There would be a base of about 25 percent of the medium, unskilled labor market.

Q    All right. Twenty-five percent of medium, unskilled jobs. Give me three, please.

A    All right. This is a machine operator. It's called a filling machine.

. . .

A    DOT code 733.685-014.

Q    All right.

A    It's medium.

Q    All right.

A    The SVP is 2. It's unskilled work. For Tennessee, about 1,200. For the United States, 35,000.

Q    All right. Second job?

A    A cleaner of equipment.

Q    All right.

A    721.687-010. It's medium. SVP is 2. It's unskilled. Fourteen hundred for Tennessee. Forty thousand for the United States.

Q    All right.

A    Next and last is a kitchen helper, number 3.

Q    Okay.

A    318.687-010.

Q    Okay.

A    It's medium, the SVP is 2, it's unskilled. About 1,500 for Tennessee and about 40,000 for the United States.

Q    All right. Hypothetical two. Assume this gentleman is of the age, education, and has the work history as he testified and transferable skills as you have testified. Assume that he has impairment in pain and they restrict his work activities as he testified. That is, he can stand five minutes; he can sit less than eight hours, two hours in a day; as to alternating this, if an employer would let him stand five minutes and sit two hours, yes, he could do that; he can walk five minutes, he would have to rest 10 to 15 minutes; he can lift less than eight pounds occasionally in an eight-hour day; his shoulders, he cannot lift – he cannot move his shoulders – cannot lift over his shoulders; his knees would occasionally go out on him – no, I take that back. That's not what he testified to. He's testified that on his knees he

> cannot go up and down stairs. So can't go up and down stairs. Lifting, he would have problems with holding, grasping, et cetera, with his hands. All right. Based on that, is there any work past US or Tennessee that he could do?
>
> A    I'm going to say probably not. I think it's probably less than sedentary work.
>
> Q    All right, I need to ask you, in accordance with Social Security Ruling 00-4P for the use of vocational experts, does the evidence that you've provided conflict with the Dictionary of Occupational Titles?
>
> A    No.

TR 32-35.

Plaintiff is correct in noting that, according to the Selected Characteristics of Occupations, the job of equipment cleaner requires frequent stooping, kneeling, and crouching and the job of kitchen helper requires frequent stooping and crouching. U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles*, 345 (4th ed. 1993). Plaintiff's argument that the VE's testimony was inconsistent with the DOT, however, is unavailing. As can be seen in the quoted passage above, the ALJ's first hypothetical question explicitly requested that the VE consider the "medical source statement in Exhibit 8F," and, prior to identifying any jobs, the VE testified that Dr. Wilson's opinion reflected a "limited range of medium [work]." TR 32. The VE then testified that, due to this limited range of medium work, only "a base of about 25 percent of the medium, unskilled labor market" applied. TR 33. Therefore, when the VE identified the jobs of equipment cleaner and kitchen helper, she was properly identifying a subset of jobs that were within the limitations of occasional stooping, kneeling, and crouching, set forth in Dr. Wilson's opinion. The VE's

14

answers identifying three jobs that Plaintiff could perform were based on the functional limitations as set out by Dr. Wilson himself, not by the ALJ's summary of Dr. Wilson's opinion.

Plaintiff's contention that the VE failed to explain the conflict between Plaintiff's limitations on standing and walking and the requirements of filling machine operator is similarly unavailing. As discussed above, the jobs identified by the VE reflected a limited range of medium work, consisting of approximately twenty-five percent of the medium, unskilled labor market. TR 32-33. Although "[m]ost medium jobs . . . require the worker to stand or walk most of the time," the VE identified the medium job of filling machine operator in the context of Plaintiff's walking and standing limitations as set forth by Dr. Wilson. SSR 83-14; TR 32. Because the ALJ and VE explicitly identified that they were speaking of a *limited* range of medium work; the VE's answers were framed within that scope. The VE's testimony did not conflict with the DOT, but in fact supplemented the DOT's generic job descriptions, which do not account for a limited range of medium work. The VE properly identified three jobs that exist in significant numbers in the national economy that Plaintiff, with all his exertional limitations as reflected in Dr. Wilson's opinion, could perform. TR 32-34.

Moreover, the ALJ properly included in the first hypothetical Plaintiff's limitations, both exertional and nonexertional. Because the ALJ's hypothetical question accurately represented Plaintiff's limitations, the ALJ properly relied on the VE's answer to the hypothetical question to prove the existence of a significant number of jobs in the national economy that Plaintiff could perform. *See Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Hardaway v. Secretary*, 823 F.2d 922, 927-928 (6th Cir. 1987); and *Varley*, 820 F.2d at 779. Accordingly, the Commissioner met his burden at step five, and Plaintiff's claim fails.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

     _____
     E. CLIFTON KNOWLES
     United States Magistrate Judge